OSCAR L. RICHARDS

*v.*

SINDEL WEINGARTEN et al.

[Filed March 10th, 1899.]

1. Where, in action to foreclose a mortgage, the defence is usury and the proof shows a usurious bargain, but the usurious contract proved does not correspond with that set up in the answer, the variance is fatal.

2. Where, on foreclosure, defendant pleads usury, but there is a variance between the contract as set up in the answer and as proven by the evidence, unless complainant consents to forego the usury, defendant will be allowed to amend his answer to conform to the proofs.

On bill.

*Mr. Patrick H. Gilhooly,* for the complainant.

*Mr. William H. Corbin,* for the defendants.

STEVENS, V. C.

The bill is filed to foreclose a mortgage given by Sindel Weingarten to the complainant, Richards, to secure the sum of $3,848.34. The defence set up is usury. The usurious bargain is averred to have been made in the city of New York, and the statute of the State of New York is pleaded in avoidance of the entire debt, principal and interest.

The case is, in some respects, not unlike *Taylor* v. *Morris,* *7 C. E. Gr. 607,* in which the court of appeals laid down the following rule: "When usury is set up by a plea in an action at law or in an answer in chancery, the terms of the usurious contract must be precisely and correctly set out; the *quantum* of the usurious interest must be specified and the proof must correspond with the allegations." It is admitted that the proof shows a usurious bargain, but it is contended that the contract proved does not correspond with that set up by the answer, either in respect of the amount of the real debt, whose payment was forborne, or of the bonus given for forbearance.

I think this contention is sustained by the proofs. And, first, as to the amount of the debt forborne. This in the answer is simply stated to be the sum of $3,405.88. It is not therein shown how that sum was ascertained, nor out of what transactions it originated. The proof shows the following facts: On January 26th, 1893, the mortgagor executed a mortgage to complainant on lands in Union county to secure the sum of $8,750. Of this sum only $6,500 was really lent. The balance represented a bonus, ascertained by capitalizing interest in such a way that, at the maturity of the mortgage, the mortgagee would receive the principal sum of $6,500 and interest thereon at twelve per cent. per annum. Within a year after this mortgage was made, a building on the mortgaged premises was destroyed by fire. A dispute arose between mortgagor and mortgagee in reference to the insurance money; the mortgagee began a foreclosure suit and the mortgagor threatened to interpose the defence of usury. While matters stood thus the parties got together and entered into a written agreement of settlement. This agreement bears date May 17th, 1894, and, although there is a conflict of evidence on this point, I think it was the intention of the mortgagee, upon the receipt of the insurance moneys, to accept a new mortgage for the difference between the amount really lent and the amount of the insurance and thus eliminate the usury. In point of fact, however, the mortgagee failed to do this. To the amount actually received by Weingarten ($6,500) were added three items, viz., $437.50, $250 and $175. The first of these

items represented ten months' interest on the whole amount of principal named in the original mortgage. Of this sum $112.50 was interest on the usurious element in it. The next item ($250) represented what the complainant called "his expenses on the first loan;" it was the amount which complainant had paid to his New York attorney out of the original bonus as "his piece of it." The last of the three items ($175) was a legitimate charge representing counsel fees, search fees and costs. The sum of these three items added to $6,500 is $7,362.50. From this sum, deducting the amount of the insurance checks credited (viz., $3,514.16), the remainder is $3,848.34, which is precisely the amount of the new mortgage. If from this we take, first, the interest on the usurious excess, $112.50, and then the item $250, there remains of lawful principal, $3,485.84; whereas the answer avers it to be $3,405.88.

Secondly, as to the amount of the bonus. The answer avers it to be the sum of $442.46, whereas by the proofs it appears to be, as I have said, $112.50 plus $250, or $362.50. It is attempted to explain this variance by showing that Weingarten paid interest upon the original mortgage in August, 1893, and that of this interest $65 represented interest on the original bonus and should be taken into the account. If this be so, the bonus in the new mortgage would be $427.50, or about $15 less than the amount averred. There would, therefore, still be a variance. I think, however, it ought not to be included for the reason that it did not enter into the contract made in May, 1894, and it is that contract alone, under the averments of the answer, which we are investigating. The answer might have set up the facts connected with the original contract and made this payment material by insisting that it was a proper subject of deduction from the amount originally lent. But it did not. The case seems in this respect to resemble the above-mentioned case of *Taylor* v. *Morris*—a case in which usury entered into the original transaction—but had not been sufficiently pleaded in the answer to make it part of the defence. Following the rule laid down in that authoritative case, I am bound to say that there is a material variance between the pleading and the proofs.

Logically, the defence not having been sustained, it would seem that complainant is entitled to recover according to his contract. But in the case of *Cubberly* v. *Glading, 2 Stew. Eq. 104,* while declaring that the defence of usury was not sustained in the manner in which it had been alleged, Chancellor Runyon said that he would not give the complainant the benefit of the premiums he had received, and that unless complainant would consent to deduct those premiums he would allow defendant to amend. This case went to the court of errors and was affirmed for the reasons given by the chancellor (*3 Stew. Eq. 339*). As it went there on the appeal of the mortgagor, the right of the mortgagee, in that regard, was not, in the appellate tribunal, under consideration; and the opinion on this point cannot, strictly speaking, be said to have received the endorsement of that court. Still it is so eminently just that it must commend itself to everyone. Chancellor Runyon appears, from the report, to have deducted nothing but premiums. Vice-Chancellor Van Fleet, in the subsequent case of *Cox* v. *Westcoat, 2 Stew. Eq. 551,* went further. The defendant having confessed to some usury, though not the usury alleged, he allowed an amendment and advised a decree on the amended answer, sustaining the defence. The usurious bargain having been made in this state, the effect of that decree was to enforce a penalty to the extent of interest and costs only. Even in such a case, however, it seems to me that the course taken was not quite in harmony with the judgment of the court of errors in *Taylor* v. *Morris,* where Mr. Justice Depue says: "The plaintiff on a successful defence loses the interest on the sum lent and the costs of the suit, both of which he would be entitled to recover on a demand not obnoxious to the provisions of the statute. *To this extent the defence involves a forfeiture as a penalty and the rules of evidence touching the enforcement of a penalty still apply.*" If an amendment were allowed in the present case there could be no recovery whatever, for by the law of New York the entire debt would be forfeited, and *Taylor* v. *Morris* would be practically overruled. I doubt very much whether on principle the court ought, in any case, to go further than compel, through the

14

power it has to allow amendments, the deduction of the premium or bonus and interest thereon.

If the complainant consents to forego the bonus and usurious interest received, I will advise a decree in his favor. If not, I will hear an application to amend.